**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **THADIEUS GOODS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 09 C 7406** |
| | ) | |
| **OFFICER NAVARRO, OFFICER GLINSEY, TOM DART and DAVID FAGUS, individually and in their official capacities,** | ) | **Judge Rebecca R. Pallmeyer** |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

*Pro se* Plaintiff Thadieus Goods, a pretrial detainee, brought a civil rights suit pursuant to 42 U.S.C. § 1983 against Cook County Sheriff's Deputies Navarro and Glinsey. Plaintiff alleges that Defendants were deliberately indifferent to serious medical needs that resulted from a traffic accident in which Defendants were transporting Mr. Goods back to jail following a court appearance. Defendants have moved for summary judgment, and for the reasons set forth below, the motion is granted.

**FACTUAL AND PROCEDURAL HISTORY**

The following factual information is drawn from the parties' Local Rule 56.1 materials and other applicable portions of the record, and is presented in the light most favorable to the non-moving party, with all reasonable inferences drawn in his favor. *E.E.O.C. v. AutoZone, Inc.*, 630 F.3d 635, 639 (7th Cir. 2010).

Plaintiff is a pretrial detainee in protective custody at the Cook County Jail. (Defs.' Local Rule 56.1(a) Statement of Material Facts and Supporting Exhibits (hereinafter "Defs.' 56.1"), ¶¶ 1, 4.) Due to his protective custody status, when he is transported to court, he is taken by car in the custody of two deputy sheriffs with his legs shackled, his hands cuffed in a "blue box," and his waist chained. (*Id.*¶¶ 5, 6.)

On January 15, 2009, Plaintiff, who is 6'5" tall and weighs approximately 350 pounds, was transported to court in the custody of Officers Navarro and Glinsey. (*Id.* ¶¶ 7, 8.) Confined, as described above, by leg shackles, handcuffs, and a waist chain, Plaintiff was seated in the back of a marked Cook County Sheriff's squad car. Plaintiff refers to the back seat of the squad car as a "cage," separated from the front of the car by a barrier composed, on the bottom, of metal, and on the top of plexiglass and metal wire. (*Id*. ¶ 9.) Plaintiff could hear the car radio, but not the officers' conversation, and could speak to the officers himself through the metal-wire enclosure. (Goods Dep. 38:19-39:8, Tab 2 to Defs.' 56.1; Defs.' 56.1 at ¶ 19.) Officers Navarro and Glinsey transported Plaintiff to the Markham courthouse without incident. (*Id.* ¶ 10.)

After his court appearance, Officer Navarro returned Plaintiff to the back seat of the squad car for the return trip. Due to his size, Plaintiff was seated at an angle; he was not wearing a seatbelt. (Goods Dep. 29:18-24, 49:1-2, Ex. 2 to Defs.' 56.1.) With Officer Navarro at the wheel and Officer Glinsey in the front passenger seat, the squad car traveled north on Kedzie Avenue in Chicago. (Defs.' 56.1 ¶¶ 11-12.) Immediately after the squad car crossed the intersection at 47th Street, traffic came to a quick stop. (*Id.* ¶ 12.) Navarro stopped quickly and managed to avoid striking the car immediately in front of him, but the squad car was rear-ended by the car behind them. (*Id.* ¶ 13.) The impact did not cause the squad car to hit the car immediately in front of it. (*Id.*) The collision did, however, send Plaintiff forward to the space between the back seat and the back of the partition separating the back seat from the front compartment. (*Id.* ¶ 14.) Plaintiff hit his head on the metal-wire portion of the divider and, although he did not lose consciousness or bleed from impact, the cuffs on his wrists and ankles dug into his skin, leaving cuts and marks. (*Id.* ¶¶ 14-15.) Plaintiff experienced pain in his lower back, legs, and head. (*Id.* ¶ 16.) When asked to rate the severity of his pain, Plaintiff quantified it as a ten on a scale of one to ten, where ten is the most painful. (*Id.* ¶ 26.)

Following the accident, Navarro immediately exited the squad car and spoke to the driver

of the other vehicle for less than two minutes. (*Id.* ¶ 17.) Meanwhile, Plaintiff was able to "scoot" himself back onto the back seat of the squad car. (*Id.* ¶ 21.) He told Defendant Glinsey that his back and head hurt and that he needed medical attention. After Navarro returned to the squad car, Plaintiff told Navarro the same thing. (*Id.* ¶¶ 19, 20.) Glinsey told Plaintiff to "hold on," and Navarro assured him he would get medical attention. (*Id.*) Navarro then drove the squad car from 47th Street and Kedzie Avenue, the accident site, to the Cook County Jail. (*Id.* ¶ 23.) The trip from the accident site to jail took approximately twenty minutes. (*Id.*)

Upon their return to the jail, Officer Glinsey removed Plaintiff from the squad car. (*Id.* ¶ 24.) Although limping and continuing to suffer great pain in his legs and back, Plaintiff was able to walk without assistance. (*Id.* ¶¶ 25-27.) As he was being taken from the squad car, Plaintiff told the Defendants, "You are all bogus; you are all bogus; you all could have gotten me some medical attention." (*Id.* ¶ 28.) As he was brought into the jail through the receiving unit in Division 5, Plaintiff did not ask Defendant Officers to transport him to the medical center, nor did he tell the officers in the receiving unit that he needed medical attention; he did, however, demand to see a "white shirt" (presumably, a supervisor). (*Id.* ¶¶ 29-31.)

Defendants returned Plaintiff to his cell in Division 9, removed the shackles, the blue box, and the chain, and then left. (*Id.* ¶ 33.) From the time of arrival at the jail until Plaintiff was returned to his cell, approximately thirty to forty minutes elapsed. (*Id.* ¶ 32.) Plaintiff did not again request medical attention or report pain during the walk to Division 9, and he was able to walk without assistance. (*Id.*)

Upon his return to his cell, Plaintiff spoke to the tier officer, Officer Jay Moore. Plaintiff told Moore that he had just been in a traffic accident and needed medical attention. (*Id.* ¶ 34.) Moore immediately notified his supervisor, Sergeant Thomas, and Sergeant Thomas came to the tier, where Plaintiff described what had happened and told her that the transport officers had brought him back to jail rather than seeking medical attention for him. (*Id.* ¶¶ 34, 35.) Sergeant Thomas

sent Plaintiff to the Division 9 medical dispensary, and Plaintiff reported to the medical technician that he had been in an accident and was experiencing pain and dizziness. (*Id.* ¶¶ 35, 36.) Plaintiff showed the technician the marks caused by the handcuffs. (*Id.* ¶ 37.) Plaintiff was not bleeding. The technician instructed Plaintiff to clean the cuts, provided him with ointment and Tylenol, and placed him on the list to see the doctor. (*Id.* ¶ 38.) Plaintiff has no complaints regarding the treatment he received from the medical technician. (*Id.*)

A few days later, a physician's assistant, Kevin Simms, examined Plaintiff. (*Id.* ¶ 39.) Plaintiff's pain had subsided somewhat, but he told Mr. Simms that he was still experiencing pain in his back, head, and legs. (*Id.*) The physician's assistant examined Plaintiff, prescribed more pain medication, and recommended an X-ray. (*Id.* ¶ 40.) Dr. Kahn later performed an X-ray and told Plaintiff the X-ray did not show anything. (*Id.* ¶ 41.) At Dr. Kahn's direction, Plaintiff received physical therapy once a week. (*Id.* ¶ 42.) He acknowledged that the physical therapy exercises improved his condition. (*Id.*) He acknowledged, further, that he had received treatment at Cermak Health Services for low back pain even before the January 15, 2009 incident. (*Id.* ¶ 43.)

## **DISCUSSION**

Defendants have challenged Plaintiff's compliance with Local Rule 56.1, but the court finds Plaintiff's submissions adequate to identify evidentiary support for his claims. In any event, the central facts in this case are undisputed. The parties agree that Plaintiff was injured in a car accident on January 15, 2009, that he advised Defendants that he needed immediate medical attention, and that Defendants chose instead to return him to Cook County Jail. The central dispute is whether that decision reflects deliberate indifference to a serious medical need. For the reasons explained below, this court concludes it does not.[1]

---

[1] Plaintiff has not suggested that the accident itself supports a constitutional claim. Courts that have confronted this issue have held that transporting a prisoner without a seatbelt does not establish deliberate indifference without additional evidence of purposeful, reckless action by (continued...)

As a pretrial detainee, Plaintiff has a right under the Fourteenth Amendment to receive adequate medical care. Where a plaintiff asserts that he or she did not receive such medical care, the court reviews the situation for "deliberate indifference." *Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010); *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). A deliberate indifference claim requires: (1) an objectively serious condition, (2) that Defendants knew of the condition and were deliberately indifferent to treating Plaintiff, and (3) that the deliberate indifference caused injury. *Id.* In this case, it is not clear that any of these requirements have been met.

## I. "Objectively Serious" Prong

"A medical condition is serious if it 'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). Without deciding the issue, the court will assume for purposes of this discussion that Plaintiff's condition was objectively serious.

Defendants challenge this assumption, suggesting that Plaintiff suffered only minor cuts and associated pain from the accident. Defendants are correct that not every bump or bruise qualifies as an "objectively serious condition." Correctional officials do not violate the Constitutional by refusing "'to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue—the sorts of ailments for which many people who are not in prison do not seek medical attention.'" *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 829 (7th Cir. 2009) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997)). Defendants note that injuries to Plaintiff's hands and legs appear to have been superficial. Plaintiff also claims to have

---

[1](...continued)
the transporting officer. *Taylor v. Stateville Dep't of Corr.*, No. 10 C 3700, 2010 WL 5014185, at *1-2 (N.D. Ill. Dec. 1, 2010) (Coleman, J.) (discussing case law from federal courts throughout the country on this point). The record suggests, at most, that this was a routine car accident and there is no indication of reckless driving by Defendant Navarro.

experienced great pain as a result of the accident—pain he ranked at ten on a scale from one to ten. The existence of great pain can indicate a serious medical condition requiring treatment. *See Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002) (discussing cases on this point). Yet when Plaintiff exited the squad car, denouncing the Defendants' conduct as "bogus," it is undisputed that he was able to walk from the squad car to the Jail without assistance, and then from the receiving unit to his own tier, again without assistance. When Plaintiff did receive medical treatment, soon after the accident, the medical technician provided pain medication and ointment, but did not proceed with any other emergency treatment, suggesting that the technician did not perceive his condition as grave. An X-ray taken later revealed no fractures. So far as this record shows, Plaintiff has no serious or permanent injuries as a result of this incident.

## II. "Deliberate Indifference" Prong

Even assuming that the pain Plaintiff suffered was "objectively serious," however, Plaintiff can prevail here only if he can also show that Defendants were deliberately indifferent to his condition. *Gayton*, 593 F.3d at 620. "Deliberate indifference 'is more than negligence and approaches intentional wrongdoing.'" *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (quoting *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 988 (7th Cir. 1988)). The question here is whether the brief delay from when the accident occurred to when he received treatment establishes that Defendants were deliberately indifferent.

Certainly, Defendants were aware that Plaintiff was involved in a car accident and had requested assistance. Plaintiff testified that Glinsey responded to the initial request for medical attention by telling him to "hold on," and that Navarro assured Plaintiff that he would receive medical attention. Yet those promises do not establish that Defendants recognized that Plaintiff needed emergency medical treatment. Defendants were aware that the accident was relatively minor. The force of the car that rear-ended the squad car was so minimal that it did not cause the squad car to strike the car immediately in front of it despite the fact that the squad car had just narrowly

avoided hitting that car. Plaintiff himself was thrown from his seat by the impact; but the fact that force was comparatively slight is relevant to the officers' perception of the situation. Any damage to the squad car itself was evidently minimal; there is no indication that any report was made on the scene, and the Defendants were able to drive it safely back to the Jail immediately after the incident. It is not apparent from the record that either of the Defendants was wearing a seatbelt, but it appears that they suffered no injuries themselves, and there is no evidence that anyone else requested medical attention on the scene. Most significantly, Plaintiff was not bleeding, was conscious and able to speak, and, despite being in restraints, was able to maneuver himself back to a seated position in the back of the squad car. These undisputed facts, even when viewed in the light most favorable to Plaintiff, demonstrate the accident was not so serious as to require an ambulance or other immediate medical attention at the accident scene. Indeed, even now Plaintiff does not suggest what medical attention he should have immediately received.

The fact that Defendants did not seek immediate emergency medical care does not demonstrate deliberate indifference. "Anyone who has ever visited a doctor's office knows that some delays in treatment are inevitable, particularly absent a life-threatening emergency. Such delays are even more likely in [a correctional] environment." *Berry v. Peterman*, 604 F.3d 435, 442 (7th Cir. 2010). Plaintiff's condition, while painful, was not life-threatening. Officials are required to "'act responsibly under the circumstances that confront them' but are not required to act flawlessly." 533 F.3d at 511 (quoting *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004)). The choice to return to the jail, where Defendants knew medical attention was available, without first providing Plaintiff with immediate medical assistance was not so egregious as to be deliberately indifferent.

**c. Causation Prong**

Because Plaintiff has not established deliberate indifference, the court need not devote extensive attention to this third prong of the analysis. Notably, however, Plaintiff has offered no evidence that Defendants' brief delay in obtaining treatment for his injuries caused or exacerbated any harm to him

**CONCLUSION**

Because the record, viewed in the light most favorable to Plaintiff, reveals no disputes of material fact on the issue of deliberate indifference, Defendants' motion for summary judgment [65] is granted.

ENTER:

Dated: March 26, 2012

REBECCA R. PALLMEYER
United States District Judge